# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| GLOBAL TEL*LINK CORPORATION, | § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. |
| v. | § § | 3:14-CV-00829-K |
| SECURUS TECHNOLOGIES, INC. | § § | **ECF** |
| *Defendant*. | § § § | |

# PLAINTIFF GLOBAL TEL*LINK CORPORATION'S
# RESPONSIVE CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

A.  The '732 Patent ............................................................................................................... 2
    1. *"streaming converter"* ........................................................................................ 2
    2. *"first telephone instrument"* .............................................................................. 2
    3. *"coupled to"* ...................................................................................................... 3
    4. *"workstation"* .................................................................................................... 5
    5. *"ongoing conversations"* .................................................................................. 6
B.  The '021 Patent ............................................................................................................... 6
    1. *"routing means"* ................................................................................................ 6
    2. *"one or more apparatuses digitizes audio . . . and stores said audio . . ."* ........ 7
    3. *"coupled to"* ...................................................................................................... 8
    4. *"central platform"* ............................................................................................ 8
    5. *"authentication means"* .................................................................................. 11
C.  The '243 and '736 Patents ............................................................................................ 11
    1. *"voice print"* ................................................................................................... 11
    2. *"matching"* ..................................................................................................... 13
    3. *"costs of conversations by said local user"* ................................................... 14

## TABLE OF AUTHORITIES

Page

**CASES**

*800 Adept, Inc. v. AT&T Mobility, LLC*, Nos. 5:07CV23, 57, 2008 WL 4831093
 (E.D. Tex. July 23, 2008) ........................................................................................7

*Acacia Media Techs. Corp. v. New Destiny Internet Grp.*, Nos. SA-CV-02-1040-JW
 *et al.*, 2004 WL 5645597 (C.D. Cal. July 12, 2004) ..................................................5

*Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336 (Fed. Cir. 2002) ......................1

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) ..........................................9

*Biomedical Polymers, Inc. v. Evergreen Indus., Inc.*, 976 F. Supp. 98 (D. Mass. 1997) ...............4

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106 (Fed. Cir. 2002) ........11

*Data Race, Inc. v. Lucent Techs., Inc.*, 73 F. Supp. 2d 698 (W.D. Tex. 1999) ...........4, 5

*IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422 (Fed. Cir. 2000) ................1, 2

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) ..................1, 2, 14

*Lighting World Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004) .........9

*Mosaid Techs., Inc. v. Samsung Elecs. Co.*, Nos. 01-CV-4340 *et al.*, 2004 WL 5646373
 (D.N.J. Mar. 22, 2004) .............................................................................................5

*Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473 (Fed. Cir. 1998) ..............13

*Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008) ............................10

*OPTi Inc. v. Silicon Integrated Sys. Corp.*, No. 2:10-CV-279, 2012 WL 6684691
 (E.D. Tex. Dec. 21, 2012) ......................................................................................11

*PCTEL, Inc. v. Agere Sys., Inc.*, No. C03-02474, 2006 WL 734385 (N.D. Cal.
 Mar. 20, 2006) .........................................................................................................4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ...........................................1, 13

*Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294 (Fed. Cir. 1999) ............................11

*Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 782 F. Supp. 2d 317
 (S.D. Tex. 2011) ....................................................................................................12

*TI Grp. Automotive Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126 (Fed. Cir. 2004) ........................................................................................................7

*VPS, LLC v. SmugMug, Inc.*, No. 10 CV 2142, 2012 WL 5471012 (N.D. Ill. Nov. 9, 2012) ........................................................................................................7

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .......................................1, 12

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225 (Fed. Cir. 2001) ............................9

*Williamson v. Citrix Online, LLC*, __ F.3d. __, 2014 WL 5649886 (Fed. Cir. Nov. 5, 2014) ...............................................................................................................8, 9

**STATUTES**

35 U.S.C. § 112(f)................................................................................................6, 7, 8, 9, 10

Securus's opening brief is a study in common claim construction errors. For term after term, Securus does exactly what the Federal Circuit has "repeatedly warned against," proposing to confine the claims to particular exemplary embodiments of the invention described in the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc); *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification . . . into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). Securus relies heavily on definitions of terms from general-purpose dictionaries, often beginning and ending its analysis with those definitions, despite the Federal Circuit's emphatic rejection of this approach. *See Phillips*, 415 F.3d at 1321-22.[1] Securus even proposes to limit several claim terms based on the preambles of various claims, despite the irrelevance of those preambles to claim construction. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002) ("Generally, the preamble does not limit the claims."); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000) ("If the preamble adds no limitations to those in the body of the claim, the preamble is not itself a claim limitation and is irrelevant to proper construction of the claim."). These and other similar errors infect each of Securus's proposed constructions. And apart from these faulty arguments, Securus offers nothing but conclusory assertions in support of its proposals.

---

[1] Securus (at 2 & n.7) cites a single case (*Vitronics*) supposedly justifying its reliance on dictionary definitions. But that case predated the Federal Circuit's "clarification" of its previous statements about the proper use of dictionaries in its en banc *Phillips* decision, 415 F.3d at 1312. Moreover, even the cited case cannot support Securus's heavy dependence on dictionary definitions, totally divorced from the context of the intrinsic evidence, to bolster its arguments. The Federal Circuit rejected the district court's claim construction in that case, explaining that resorting to extrinsic evidence for claim construction purposes—as opposed to merely understanding the technology—would have been proper "[o]nly if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996). Securus does not identify any such lingering ambiguity in any of the claim terms for which it relies on dictionary definitions.

**PLAINTIFF GLOBAL TEL*LINK CORPORATION'S**                        **PAGE 1**
<u>**RESPONSIVE CLAIM CONSTRUCTION BRIEF**</u>

In short, Securus's proposed constructions are not properly grounded in the language of the claims as informed by the patent specifications. GTL's proposed constructions are. For the reasons discussed below and in GTL's opening brief, the Court should adopt GTL's proposed constructions.

**A.     The '732 Patent**

**1.** *"streaming converter."* Securus (at 3-4) relies for its proposed construction on two things: a description of a single embodiment in the specification and definitions from general-purpose dictionaries. But Securus has identified nothing in the claims or specification of the '732 patent demonstrating a clear intention on the part of the patentee to limit the claimed streaming converter to that embodiment. Absent such a demonstration, it is improper to restrict the claim language to that specific embodiment. *See Liebel-Flarsheim*, 358 F.3d at 906; GTL Br. 4-5. It is also improper (and unnecessary) to resort to general purpose dictionaries when words such as "streaming" and "converter" are easily understood in light of the intrinsic evidence, which GTL cited in its opening brief (at 4). Finally, Securus is wrong (at 4) to criticize GTL's proposed construction as "omitting the requirement that data is converted on the fly" and "the requirement that the compressed voice data be converted into a standard Windows '.wav' format." Those are not "requirements" of the claim language but are part of one specific embodiment described in the specification, which Securus improperly imports into the claims.

**2.** *"first telephone instrument."* As GTL explained (at 5-6), this straightforward claim language does not need to be construed. Securus offers no reason why it should be. First, Securus (at 5) improperly relies on preamble language (such as the word "specialized" in the preamble to claim 20) but gives no reason for abandoning the general rule that preambles are not relevant to claim construction. *See, e.g.*, *IMS Tech.*, 206 F.3d at 1434. Second, Securus (at 5)

reasons that, because the first telephone instrument must be "specifically configured" to communicate with another telephone, it necessarily consists of "hardware and software uniquely arranged" to accomplish that communication. Securus cites no support for this proposition, and there is none. The claims make no mention of a telephone instrument requiring specialized hardware, let alone software of any kind. Contrary to Securus's conclusory assertion, an ordinary, "unintelligent" telephone is "configured to" communicate with other telephones when connected to a network—as a person of ordinary skill (or anyone who has used a telephone) plainly knows. Moreover, to the extent any construction is necessary, GTL's proposal accounts for the "configured to" language by requiring that the telephone instrument be capable of sending and receiving voice audio to and from a second telephone. Nothing more is required.

    **3.** ***"coupled to."*** To begin with, Securus does not defend its proposal to limit the meaning of "coupled" to a "permanent" connection. As GTL explained (at 6-7), there is no merit to that proposal, and the Court should reject it.

    The Court should also reject Securus's proposal to require a "direct" connection between two things that are "coupled." Securus fails to square its proposal with the multiple claim terms and specification excerpts that describe two things being coupled together even though they are physically remote from each other, and even if they are connected only indirectly, through such extensive networks as the Internet or the public switched telephone network. *See* GTL Br. 6-7 (citing examples). Securus asserts (at 8) that "the claims and specification clearly state that when devices are 'coupled to' each other, the devices are directly connected." But Securus cites no examples of these allegedly clear statements. Instead, it points to claim 2, which describes one thing being "coupled between" two other things. But nothing about claim 2 suggests that "coupled between" itself refers to a direct versus an indirect connection, and it certainly suggests

nothing about the separate claim term "coupled to." Securus's evidence simply does not support its argument.

Securus also fails to acknowledge the numerous cases (cited in GTL's brief, at 7) confirming that "coupling" can entail a direct or indirect connection. And Securus's own cited cases (at 7-8) do not undermine that principle. In Securus's primary authority, although the court did construe coupling to require a direct connection, it explained that a "direct connection" did not preclude intervening connections (or entire networks) between two coupled elements. *See Data Race, Inc. v. Lucent Techs., Inc.*, 73 F. Supp. 2d 698, 720 (W.D. Tex. 1999) (explaining that direct connections "do not exclude intermediate 'hops'" within an element, which could include the entire public switched telephone network). Securus, however, does not seem to allow for that possibility. Nonetheless, if the Court were to accept Securus's argument based on *Data Race* that a direct connection is required, then it should clarify (as the *Data Race* opinion does) that there may be other devices, connections, or networks between the two things that are coupled together.

None of Securus's other cases support its argument, either. In one case, the prosecution history made clear that the patentee had limited the "coupling" term to a direct connection by distinguishing the prior art on that ground. *See PCTEL, Inc. v. Agere Sys., Inc.*, No. C03-02474, 2006 WL 734385, at *5 (N.D. Cal. Mar. 20, 2006). Securus does not identify any similar statements in the '732 patent prosecution history. In another case, which involved a mechanical invention, the claim contained other words making clear that a direct physical connection was necessary. *See Biomedical Polymers, Inc. v. Evergreen Indus., Inc.*, 976 F. Supp. 98, 101 (D. Mass. 1997) (construing term requiring a "graspable" object to be "releasably coupled" to another object). The final two cases cited by Securus are unpublished opinions that contain no

analysis explaining why the courts construed the "coupling" terms at issue to require a direct connection, making it impossible to draw any understanding of how (if at all) those cases should apply here. *See Acacia Media Techs. Corp. v. New Destiny Internet Grp.*, Nos. SA-CV-02-1040-JW *et al.*, 2004 WL 5645597, at *12 (C.D. Cal. July 12, 2004) (relying on a single, general-purpose dictionary definition to conclude, with no further analysis, that the "plain and ordinary" meaning of "coupled" is a direct connection); *Mosaid Techs., Inc. v. Samsung Elecs. Co.*, Nos. 01-CV-4340 *et al.*, 2004 WL 5646373, at *1 (D.N.J. Mar. 22, 2004) (stating, in a single line and with no analysis, that "coupled" means directly connected). None of the authority cited by Securus counsels in favor of limiting the "coupling" terms at issue in this case to a direct connection.

Finally, as to the "selectively coupled" limitation of claim 10, Securus does not defend the portion of its proposed construction that requires a "workstation operator" to choose the selective coupling. As GTL explained (at 7-8), there is no support for that proposal, and the Court should reject it. Securus also provides no valid basis for accepting its interpretation of selective coupling as a "temporary" connection. Securus cites (at 8) only a single definition of the words "select, selective, selectively" from a general-purpose dictionary; even if it were proper to resort to extrinsic evidence in the first instance, that definition says nothing about an activity being temporary. Securus does not explain how this definition aids its position, nor does it cite anything intrinsic in the patent to support its argument.

    **4.** *"workstation."* The intrinsic evidence cited by Securus shows why its proposed construction is wrong. According to Securus (at 9-10), the workstation claimed in the '732 patent cannot be a personal computer; it must be more "powerful" and must have some of the vague, undefined attributes strewn amidst the various dictionary definitions that Securus resorts

to even though it identifies no ambiguity in the claim language. But the specification plainly refutes that argument. As Securus concedes (at 9), the specification compares the capabilities of a device shown as "terminal 210," to a device shown as "workstation 170."[2] And terminal 210 can be an ordinary personal computer; indeed, it is "illustratively shown as" one. '732 patent 7:39-40. Moreover, the patent says nothing about this embodiment of Terminal 210 being an especially "powerful" or "high-speed" personal computer; it simply calls it a "personal computer." Terminal 210 is also described as having "*at least all the capabilities of the workstations 170, 170'.*" *Id.* 7:38-39 (emphasis added). In other words, terminal 210 has all the same capabilities as—and possibly more than—the workstation 170. If terminal 210 can satisfy that condition and still be a personal computer, then workstation 170 must be able to be an ordinary personal computer as well. None of the irrelevant extrinsic evidence Securus cites can overcome this fact. Furthermore, as GTL explained (at 8-9), Securus's proposed construction introduces needless ambiguity into a claim term that is already understandable to lay jurors.

**5.** *"ongoing conversations."* Securus makes no effort to explain why any construction is required for this easily understood term, let alone a redundant construction such as the one proposed by Securus that requires a conversation to be both "real-time" and "actually in process." A jury will only be confused by that unnecessary explication. As GTL explained (at 9), there is no need for the Court to construe this term.

**B.   The '021 Patent**

**1.** *"routing means."* First, contrary to Securus's argument, the term "routing means" is not subject to § 112(f). As GTL explained (at 10), that term conveys sufficient structure to a

---

[2] As shown by GTL's brief (at 8-9), GTL does not agree with Securus that the "workstation" recited in claims 4 and 23 of the '732 patent must correspond to the "workstation 170" rather than the "terminal 210." But even accepting Securus's attempt to limit the claim term in that way, its reasoning about the respective capabilities of each device is flatly contradicted by the specification. Moreover, if the workstation does correspond to "terminal 210," the specification plainly states that it can be a personal computer.

person of ordinary skill in the art, who would understand it as a router. The cases cited by Securus (at 13 & n.49) are not to the contrary. In both, the claim terms recited additional functions beyond simply "routing," and both parties agreed that § 112(f) applied. *See TI Grp. Automotive Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1136-37 (Fed. Cir. 2004); *800 Adept, Inc. v. AT&T Mobility, LLC*, Nos. 5:07-cv-23, -57, 2008 WL 4831093, at *11 (E.D. Tex. July 23, 2008). Moreover, contrary to Securus's assertion, a router is sufficient structure to perform the function of routing. *See VPS, LLC v. SmugMug, Inc.*, No. 10 CV 2142, 2012 WL 5471012, at *21 (N.D. Ill. Nov. 9, 2012) (finding "a router" to be sufficient means to perform the function of "electronically routing").

Second, Securus's proposed function and structure are wrong for the reasons described in GTL's brief (at 11-12). Securus's unduly narrow function violates the doctrine of claim differentiation, and Securus cannot avoid that doctrine simply by stating (at 13), with no support and no apparent logic, that a routing means coupled to both a telephone terminal and a central platform may route calls *to* that platform but not *through* that platform. There is no basis for this statement, which is also contrary to the specification. *See* '021 patent 9:48-50. And because Securus is wrong that the claimed function does not include routing calls through the platform, it is also wrong that the corresponding structure cannot include router **221**, which can be connected or internal to the platform. *See* '021 patent 18:38-40. Securus's proposed structure, in contrast, cannot be correct because the gateway is not a router (as GTL explained, at 12).

  2. **"one or more apparatuses digitizes audio . . . and stores said audio . . . ."** To begin with, Securus does not defend the portion of its construction that requires the digitized audio to be "place[d] in a location at said institution." As GTL explained (at 13-14), that interpretation is plainly wrong.

Instead, Securus (at 15) makes the absurd, unsupported argument that "[t]he digitizing process and the storing process" described in this claim language "are unrelated." Securus's argument depends on the premise that audio is no longer "audio" once it has been digitized.[3] Unsurprisingly, Securus cites nothing to support that idea. It is contrary to the specification, which describes how the central platform "digitizes telephone audio" and then "stores *the digitized audio*." '021 patent 16:44-49 (emphasis added). It is also contrary to the common understanding of digital audio as audio information that is stored in digital form. Indeed, Securus itself has used the term "digital audio" in its own documents. *See, e.g.*, Collin County RFP at 282 (App. 14) (citing a feature provided by a third party that would allow the customer "to quickly and easily find subject matter within *digital audio and video files*") (emphasis added). Securus cannot square its contention with the plain language of the '021 patent claims, which state that "said audio"—that is, the same audio that was digitized—is what is stored. Moreover, Securus does not explain what might be done with the digitized audio if it is not stored, or what alternative audio might be stored if it is not the same audio that was digitized. In short, Securus cannot plausibly contend that the stored audio is not the same audio that has been digitized.

    3. *"coupled to."* Securus's construction should be rejected as to the '021 patent for the same reasons, discussed above, that it should be rejected as to the '732 patent.

    4. *"central platform."* This term is not subject to § 112(f). The absence of the standard language for invoking that provision—"means for"—creates a "strong presumption" that § 112(f) does not apply, as the Federal Circuit reaffirmed just last month. *Williamson v. Citrix Online*, LLC, __ F.3d __, 2014 WL 5649886, at *5-6 (Fed. Cir. Nov. 5, 2014) (holding that

---

[3] *See* Securus Br. 15 ("These limitations require that the devices digitize *audio* and, separately, store *audio*. Based on a plain reading of these phrases, it cannot be said that the devices digitize audio and then store the digitized product."). GTL understands Securus to be saying that the "digitized product" is not "audio."

"distributed learning control module" was not in means-plus-function format).  The Federal Circuit has "'seldom held that a limitation not using the term 'means' must be considered to be in means-plus-function form,' and 'the circumstances must be [unusual] to overcome the presumption.'"  *Id.* at *6 (alteration in original) (quoting *Lighting World Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1362 (Fed. Cir. 2004)); *accord Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1297 (Fed. Cir. 2014).  Securus cites no unusual circumstances and makes no attempt to overcome the strong presumption that § 112(f) does not apply.

The call control platform is a structural element; the specification describes calls being routed "through the platform and connected to the proper outgoing trunk."  '021 patent 9:48-50; *see also* GTL Br. 16 (summarizing patent's description of platform structure).  Securus's own U.S. Patent No. 8,099,080 explains how such platforms are used in prisons:

> [V]arious call processing platforms have been implemented through which inmate calls into and out of a prison facility are controlled, recorded, and monitored. Such call processing platforms generally comprise a number of ports through which telephone trunks of the public switched telephone network (PSTN) are coupled to analog telephone lines associated with telephone terminals disposed in inmate accessible areas of the prison facility.

U.S. Pat. No. 8,099,080, 1:47-54 (App. 21).  Securus's own patent thus illustrates that a call control platform is used by persons having skill in the art to denote a structure.  Therefore, § 112(f) does not apply.

In any event, even if § 112(f) did apply, Securus's proposed construction would be wrong.  Securus offers no support for its unprecedented *sixteen-part* definition of the structure corresponding to the central platform.  Securus seems to admit what GTL pointed out (at 16-17)—that the construction of a § 112(f) claim term cannot include "structural limitations from the written description that are unnecessary to perform the claimed function."  *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001).  Yet Securus's proposed

corresponding structure goes far beyond the hardware and software necessary to perform the function of processing a telephone call made from a prison phone. For example, items 3, 4, 5, 6, 9, 10, 11, 12, 13, 14, 15, and 16 from Securus's list of corresponding structures (reproduced at pages 17-18 of its brief) are unnecessary—none of them is required by any language in any claim of the '021 patent and none is necessary to process calls according to the claimed invention. And the few remaining items on that list are redundant with other claim limitations, such as the routing means and the audio recorder. Securus makes no effort to show how any of these sixteen items, let alone all of them, are necessary to process calls.

      Moreover, Securus's critique of GTL's proposed construction fails. Securus contends (at 19) that the structures cited by GTL—that is, those constituting the actual "central platform" described in the claims—"do not disclose actual structure in any meaningful way, which would make the claim impermissibly indefinite." To begin with, there could be a potential indefiniteness problem only if this claim term were subject to § 112(f), which it is not. Furthermore, Securus's cited authority (at 19 n.69) does not support its argument. In that case, the Federal Circuit repeated the normal rule that the corresponding structure for a means-plus-function claim reciting software functions cannot be simply a general purpose computer but must include a specific algorithm. *See Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008). That case is wholly irrelevant here. The "central platform" claim term of the '021 patent is not written in means-plus-function terms and does not describe a function performed by software alone. And GTL does not identify a mere general-purpose computer as the structure corresponding to the call-processing function; if a structure must be defined, GTL has identified a particular platform depicted in the specification of the patent.

**5.** *"authentication means."* Securus's arguments on this term consist of nothing more than conclusory statements coupled with opaque citations to case law that has no apparent relevance here. Securus states (at 20), for instance, that the claim containing the "authentication means" term "does not recite sufficient structure to perform the claimed function." But Securus gives no explanation of why that is. And it cites a case in which the Federal Circuit found there *was* sufficient structure in the claim term at issue. *See Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1304 (Fed. Cir. 1999) ("This detailed recitation of structure for performing the moving function takes this claim element out of the scope of § 112[(f)]."). Likewise, Securus states that GTL's proposed structure for the authentication means is "too generic . . . because it is an incomplete description of the corresponding structure as described in the specification." Again, Securus gives no explanation of the supposed deficiencies in GTL's construction; as GTL explained (at 18-19), its proposed structure accounts for each of the authentication means described in the '021 patent. Securus's cited cases (at 20 n.73) shed no light on the basis for its argument that GTL's proposal is too generic; those cases involved arguments that Securus is not making—namely, that there was no sufficient structure disclosed in the specification and that the claim was therefore indefinite.[4] GTL's construction should be adopted for the reasons stated in its opening brief (at 18-19).

**C.     The '243 and '736 Patents**

**1.** *"voice print."* As GTL explained (at 19-22), its proposed construction of "voice print" is grounded in the language of the claims and specifications of the related '243 and '736 patents. Securus's proposed construction is not. Securus identifies nothing in the intrinsic

---

[4] *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1119 (Fed. Cir. 2002) (finding insufficient corresponding structure but stating nothing about the proposed structure being too "generic"); *OPTi Inc. v. Silicon Integrated Sys. Corp.*, No. 2:10-CV-279, 2012 WL 6684691, at *18 (E.D. Tex. Dec. 21, 2012) (finding sufficient corresponding structure but not mentioning anything about proposed structure being too "generic").

evidence that supports its construction of "voice print" as a "graphical[] represent[ation]" of a person's voice.  Indeed, the only intrinsic evidence Securus cites at all (at 22) is a snippet from the '243 patent specification that describes the prior art (not the patented invention) and simply refers to the process of collecting voice prints through biometric scanning without explaining what a voice print actually is.  *See* '243 patent 5:20-36.  GTL, in contrast, cited extensive intrinsic evidence from the claims and specifications showing that a voice print consists of information about the characteristics of the voice of a call participant.  *See* GTL Br. 20.

Securus (at 22-23) relies mainly on extrinsic evidence in the form of general-purpose dictionary definitions[5] to support its argument that a voice print must be represented graphically (that is, visually), rather than, as the patents describe, through the vocal characteristics of the speaker as reflected in an audio sampling.  Securus has no justification for resorting to extrinsic evidence when the patents themselves make clear what a "voice print" means in the context of the claimed inventions.  *See, e.g.*, *Vitronics*, 90 F.3d at 1584 (explaining that resort to extrinsic evidence is proper "[o]nly if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence"); *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 782 F. Supp. 2d 317, 337 (S.D. Tex. 2011) ("Only if there is still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence, should a trial court resort to extrinsic evidence, such as expert witness testimony, dictionary definitions, and legal treatises.").

---

[5] Securus again pretends that one of these definitions comes from the website "Maxwellbiometrics.com"; as GTL explained (at 21 n.4), that is simply wrong.  The definition comes from the non-technical website "AudioEnglish.org"; the version of that website contained in Securus's appendix (Securus App. 1494) simply contains a banner advertisement for Maxwell Biometrics.  This is presumably because Securus's counsel had been running Internet searches containing terms related to biometric technology.  In contrast, GTL's counsel, who is a cat owner, sees a banner advertisement for a pet store when visiting the same AudioEnglish.org site.  Obviously, the pet store did not provide the definition of "voiceprint" appearing on the website; neither did Maxwell Biometrics.

It is particularly improper to rely exclusively, as Securus does, on general-purpose dictionary definitions. As the Federal Circuit has explained, "[g]eneral dictionaries . . . strive to collect all uses of particular words, from the common to the obscure," and therefore contain definitions of terms that are not limited to "a particular art field"; reliance on such dictionaries improperly "focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Phillips*, 415 F.3d at 1321-22; *see also Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998) ("Courts must exercise caution lest dictionary definitions . . . be converted into technical terms of art having legal, not linguistic, significance."). By offering a construction of "voice print" that is grounded solely in definitions of that term found in general-purpose dictionaries, Securus invites this Court to do exactly what the Federal Circuit has warned against. The Court should decline the invitation.

    **2.** *"matching."* GTL continues to believe that the "matching" terms used in the '243 patent do not require construction. *See* GTL Br. 22-24. Securus appears to concede that this is true for the claim term "matching said first and second identification numbers"; Securus's only reason for construing that term is the fact that the word "match" is also used in a separate claim term, "if said second voiceprint matches said first voice print." *See* Securus Br. 21, 23. Securus cites no support for the idea that an unambiguous claim term must be construed simply because another claim term uses the same word. More importantly, Securus never explains why the second "matching" term requires construction apart from its ordinary meaning. As GTL explained (at 22-23), numerous courts have refused to construe that easily understood word. Securus cites no contrary authority and offers no reason for this Court to depart from it.

    Even if the terms are construed, there is no support for Securus's construction, which would require the two things being matched—whether identification numbers or voice prints—to

be completely identical. GTL pointed to intrinsic evidence showing that voice prints, in particular, do not need to be completely identical in order to "match"; rather, voice data sampled during a call must be "in compliance with the [pre-recorded] information in the database *to within some pre-assigned statistical threshold*." '243 patent 12:40-44. Securus simply ignores such evidence. Instead, it states in conclusory fashion (at 24) that "[t]he voice print created when the user attempts to place a call must be the counterpart or pair of the first stored voice print. It must fit perfectly, that is, it must be exactly the same." Tellingly, Securus cites nothing in the '243 patent to support this inaccurate statement. Securus (at 24) quotes one portion of the patent specification describing matching voice prints by having a caller "state [a] pre-recorded phrase." But nothing in that description suggests that the voice prints must be exactly the same in order to be a match.[6] One person saying the same phrase at two different times may vary the pitch or tone of their voice slightly; that is why the patent allows for a variance within a pre-defined threshold to match two voice prints.[7] *See* '243 patent 12:40-44.

      3. ***"costs of conversations by said local user."*** GTL explained (at 24-25) that its proposed construction of this term as "how much said local user pays for the call" is consistent with the '736 patent's description of tracking cost information on a user-by-user basis, which is one of the purposes of the patented invention. Securus's construction, in contrast, reads that key language ("by said local user") out of the claim term by encompassing a system that tracks cost

---

[6] The description cited by Securus is also only one embodiment of the '243 patent; therefore, even if it did describe an "exact match" between two voice prints, there would be no basis to limit the claim term to that specific embodiment because the patent does not contain a clear expression of intent to do so. *See Liebel-Flarsheim*, 358 F.3d at 913.

[7] Securus's citation (at 21) of an example from the specification describing matching identification numbers suffers from the same problems. To begin with, it does not state that an "exact match" between the PIN numbers is required. *See* '243 patent 11:31-41. Securus simply states (at 22) that "in order for the matching step to work, the user identification number entered by the user must be the counterpart or pair of the pre-assigned identification number." But even if a "counterpart" or "pair" translated to exact identity, those words are Securus's alone; the '243 patent does not say that; it is a definition derived from the general-purpose dictionary definitions cherry-picked by Securus (and cited at page 22 of its brief). And again, the portion of the specification cited by Securus does not purport to describe the invention as a whole but merely "one embodiment" of it. '243 patent 11:31.

**PLAINTIFF GLOBAL TEL*LINK CORPORATION'S**                                  **PAGE 14**
**RESPONSIVE CLAIM CONSTRUCTION BRIEF**

information collectively.  Securus does not defend this aspect of its construction; indeed, Securus agrees with GTL that, according to the specification, "'the system must critically monitor and record the activities of each individual user to properly charge each individual caller for his or her outgoing calls.'"  Securus Br. 25 (quoting '736 patent 2:25-28).  Having admitted as much, Securus cannot possibly argue that its construction is adequate.  Moreover, Securus's only dispute with GTL's proposed construction is that, according to Securus, it "fails to take into account that what a user pays may not be what is charged for the call."  *Id.*  GTL disagrees with this speculation on Securus's part, which is nowhere discussed in the patent.  Nonetheless, if the Court agrees with Securus that this is an important distinction, GTL has no objection to construing this term as "how much said local user *is charged* for the call."  That minor change would resolve Securus's objection and remain faithful to the claim language and specification.

Dated: December 10, 2014

*/s/ J.C. Rozendaal*

J.C. Rozendaal (*pro hac vice*)
Courtney S. Elwood (*pro hac vice*)
Evan T. Leo (*pro hac vice*)
Christopher C. Funk (*pro hac vice*)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 326-7900
Fax: (202) 326-7999

Respectfully submitted,

E. Leon Carter
Texas State Bar No. 03914300
lcarter@carterscholer.com
John Steven Torkelson
Texas State Bar No. 00795154
jtorkelson@carterscholer.com
Linda R. Stahl
Texas State Bar No. 00798525
lstahl@carterscholer.com
Sheria D. Smith
Texas State Bar No. 24075097
ssmith@carterscholer.com
CARTER SCHOLER ARNETT
  HAMADA & MOCKLER PLLC
8150 N Central Expressway
Fifth Floor
Dallas, TX 75206
Tel: (214) 550-8188
Fax: (214) 550-8185

*Counsel for Plaintiff Global Tel*Link Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2014, Plaintiff electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send certification of such filing to all counsel of record.

*/s/ J.C. Rozendaal*