# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

GLOBAL TEL*LINK CORPORATION, §
§
  Plaintiff, §
§    Civ. Action No. 3:14-cv-0829-K
v. §
§    **JURY TRIAL DEMANDED**
SECURUS TECHNOLOGIES, INC. §
§    ECF
  Defendant. §
§
§
§

---

## DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

---

**G. Michael Gruber**
State Bar No. 08555400
mgruber@ghjhlaw.com
**Anthony J. Magee**
State Bar No. 00786081
amagee@ghjhlaw.com
**Robert E. Weitzel**
State Bar No. 24070823
rweitzel@ghjhlaw.com
**GRUBER HURST JOHANSEN HAIL SHANK LLP**
1445 Ross Avenue, Suite 2500
Dallas, Texas 75202
Telephone: 214-855-6800
Fax: 214-855-6808

*Attorneys for Defendant*
*Securus Technologies, Inc.*

# TABLE OF CONTENTS

A.  U.S. Patent No. 7,751,732 .......................................................................................1

   1.  "streaming converter" (Claims 8, 10, and 15) ................................... 1

   2.  "a first telephone instrument. . . configured for communications
       with a second telephone instrument located at a second location"
       (Claims 1, 8, and 20) ....................................................................... 1

   3.  "coupled to" (Claims 1, 5, 6, 8, 15, 20, 22, and 23), "coupled
       between" (Claim 2), and "selectively coupled to" (Claim 10) ...................... 2

   4.  "a workstation . . . configured to access recorded inmate
       conversation data stored in said device" (Claims 4 and 23) .......................... 3

   5.  "ongoing conversation," "ongoing conversations" (Claims 6 and
       10) .................................................................................................. 4

B.  U.S. Patent No. 7,783,021 .......................................................................................5

   1.  "routing means" and "at least one routing means coupled to said
       telephone terminal and said central platform" (Claim 1) ...................... 5

   2.  "one or more apparatuses digitizes audio and stores said audio for
       caller identification at said institution" (Claim 1), "one or more
       apparatuses digitizes audio regarding said conversation and stores
       said audio for caller identification at said institution" (Claims 7 and
       20), and "central platform digitizes audio regarding said
       conversation and stores said audio for caller identification at an
       institution associated with said local user" (Claim 16) ................................... 7

   3.  "coupled to" (Claims 1 and 7) ............................................................ 8

   4.  "further wherein said central platform comprises one or more
       apparatuses for processing said telephone call," (Claim 1), "further
       wherein said central platform includes one or more apparatuses
       for-processing said telephone call" (Claim 7), and "a central
       platform for processing said telephone call" (Claim 16) ............................... 8

   5.  "wherein said local user is only granted access to place a telephone
       call if an authentication means verifies identification information
       as indicative of a valid user" ........................................................... 11

C.  U.S. Patent No. 7,853,243 .......................................................................................12

   1.  "matching said first and second identification numbers" and "if
       said second voice print matches said first voice print" (Claim 1) ................ 12

   2.  "voice print" (Claim 1) ................................................................... 14

D.      U.S. Patent No. 8,509,736 .................................................................................15

1.    "voiceprint" (Claims 1, 12, and 23) ............................................. 15

2.    "costs of conversations by said local user" (Claim 31) ................................ 15

INDEX OF AUTHORITIES

**Cases**

*Advanced Software Design Corp. v. Fiserv, Inc.*,
  625 F. Supp. 2d 815 (E.D. Mo. 2008) ..................................................................... 13

*Andersen Corp. v. Fiber Composites, LLC*,
  474 F.3d 1361 (Fed. Cir. 2007) ............................................................................... 3

*Bd. of Regents of the Univ. of Texas Sys. v. Benq Am. Corp.*,
  No. A-05-CA-181SS, 2006 WL 6112210 (W.D. Tex. July 14, 2006) .................... 14

*Biomedino LLC v. Waters Tech.*,
  490 F.3d 946 (Fed. Cir. 2007) ................................................................................. 9

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
  296 F.3d 1106 (Fed. Cir. 2002) ............................................................................. 10

*Carl Zeiss Vision Int'l GMBH v. Signet Armorlite, Inc.*,
  No. 07CV0894 DMS (POR), 2008 WL 4951984 (S.D. Cal. June 2, 2008) ........... 13

*Embrex, Inc. v. Service Eng'g Corp.*,
  216 F.3d 1343 (Fed. Cir. 2000) ........................................................................... 4, 5

*Encap LLC v. Oldcastle Retail Inc.*,
  No. 11-C-808, 2012 WL 2339095 (E.D. Wis. June 19, 2012) ............................... 10

*In re Aoyama*,
  656 F.3d 1293 (Fed. Cir. 2011) ............................................................................. 12

*Inventio AG v. Thyssenkrupp Elevator Americas Corp.*,
  649 F.3d 1350 (Fed. Cir. 2011) ............................................................................... 9

*Konami Corp. v. Roxor Games, Inc.*,
  445 F. Supp. 2d 725 (E.D. Tex. 2006) .................................................................... 13

*Mass. Inst. of Tech. v. Abacus Software*,
  462 F.3d 1344 (Fed. Cir. 2006) ............................................................................... 9

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) .......................................................................... 6, 10

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ........................................................... 1, 2, 3, 14, 15

*Rodime PLC v. Seagate Tech. Inc.*,
  174 F.3d 1294 (Fed. Cir. 1999) ............................................................................... 5

*Silicon Image, Inc. v. Genesis Microchip, Inc.*,
    No. 3:01cv266, 2002 U.S. Dist. LEXIS 28916 (E.D. Va. Dec. 10, 2002) ................................ 2

*Smith v. United States*,
    114 Fed. Cl. 428 (2013) ........................................................................................... 13

*U.S. Gypsum Co. v. LaFarge N. Am. Inc.*,
    No. 03-C-6027, 2009 WL 3720032 (N.D. Ill. Nov. 2, 2009) .................................. 15

*Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*
    No. 1:05CV00955, 2011 WL 6934603 (M.D.N.C. Dec. 30, 2011) ........................ 13

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*,
    239 F.3d 1225 (Fed. Cir. 2001) ............................................................................. 11

*York Prods., Inc. v. Central Tractor*,
    99 F.3d 1568 (Fed. Cir. 1996) .............................................................................. 11

**Statutes**

35 U.S.C. §112 ¶ 6 ...................................................................................... 5, 9, 10, 11

**Other Authorities**

Manual of Patent Examining Procedure (M.P.E.P.) § 2181 ........................................ 9

**A. U.S. Patent No. 7,751,732.**

    1. "streaming converter" (Claims 8, 10, and 15)

GTL tautologically states that a "*streaming* converter" is a configured device that "converts compressed voice data into a *streaming* format." GTL's proposed construction ignores the fact that the jury must be educated as to what "streaming" means. It has long been held that "the patentee" is required to 'define precisely what it is that is patented.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Therefore, a vague or technical term like "streaming" should not be left undefined. Securus' proposed construction defines and clarifies "streaming."

GTL argues that Securus improperly limits the claims to a preferred embodiment. The same argument can be leveled at GTL whose proposed construction is based on its citation to a single embodiment. *See* GTL Brief at 4 [Dkt. 88] (citing '732 patent at 8:2-8). GTL's construction based on this specific embodiment of "streaming format" is vague and unhelpful.

Securus' construction supports the function of the streaming converter, that is, "for evaluation of the call during the data transfer process thus removing the delay in waiting for the entire file to download prior to review." '732 patent at 6:50-53, Df. App. at 12. GTL attempts, by broadening the construction, to exclude obvious and necessary limitations, embodied in the language "on the fly" and "without waiting for the entire file to download." GTL cites to no extrinsic evidence to support its construction, while Securus cites dictionary definitions that directly support its construction and are consistent with the patent's claims and specification.

    2. "a first telephone instrument. . . configured for communications with a second telephone instrument located at a second location" (Claims 1, 8, and 20)

Contrary to GTL's contention, "telephone instrument," the term used in the patent is not a term used in everyday language; therefore, the term begs for construction. This need for construction is supported by the claims themselves. For example, Claim 20 discloses a

---

"*specialized* phone system." '732 patent at Claim 20, Df. App. at 14 (emphasis added). Simply put, GTL attempts to broaden the scope of these claims by construing the disputed term to include any telephonic device that send and receive voice audio. However, the key term of this disputed claim term is "configured." The telephone instrument in these claims must be configured, i.e., purposefully arranged with and include necessary hardware and software in order for communications with a distantly located second telephony device to take place. GTL wishes to write the need for configuration out of the claim. GTL is simply trying to avoid a potential infringement problem by securing a definition that is as vague and broad as possible.

Lastly, GTL's use of "within a prison" to describe the first telephone instrument is unnecessary. Instead, Securus' proposed use of "originating" is preferable, as it is clear from the specification that inmates initiate or originate telephone calls; their telephone instruments are not destination devices. *See* '732 patent at Abstract, Df. App. at 6; 1:53-59, Df. App. at 10; 5:1-36, Df. App. at 12. Therefore, the inmate's telephone is the originating device and the remote telephone used by the called party is the destination device.

3.   "coupled to" (Claims 1, 5, 6, 8, 15, 20, 22, and 23), "coupled between" (Claim 2), and "selectively coupled to" (Claim 10)

The meaning of "coupled," as used in the '732 patent, is not necessarily obvious to a lay person. It has been used in three different contexts in the asserted claims: "coupled to;" coupled between;" and "selectively coupled to." Therefore, "coupled," as used in this patent, should be defined so that the public will be able to discern the proper limits of the claimed invention and avoid infringement. *See Phillips*, 415 F.3d at 1312.

GTL cites to *Silicon Image, Inc. v. Genesis Microchip, Inc.*, No. 3:01cv266, 2002 U.S. Dist. LEXIS 28916, at *88-89 (E.D. Va. Dec. 10, 2002) for the proposition that the common usage of "couple" supports both direct and indirect connections. GTL cites *Silicon Image* for the

proposition that this common usage (direct and indirect connection) should not be limited unless there is language in the patent that limits the scope of the term. In this case, the '732 patent does limit the scope of the terms, such that "coupled" should mean a direct and permanent connection. In most instances where the term "coupled" is used in the patent, a device is depicted as directly and permanently connected to one or more other devices. *See, e.g.*, '732 patent at Claims 1 and 4, Df. App. at 13-14. When a device is coupled between two devices or devices are coupled through an intervening medium, it is so stated in the patent claims. *See, e.g.*, '732 patent at Claims 2 and 5, Df. App. at 13-14. Securus' proposed inclusion of the word "directly" is intended to convey the meaning that devices may be coupled to each other even through an intervening medium, but that they are not coupled to each other simply because they are both coupled to another device.

GTL's proposed construction does not attempt to explain what "selectively" means in the context of coupling. The patentee's inclusion of "selectively" in relation to "coupled" in Claim 10 supports Securus' construction that such a coupling is a temporary connection and strongly indicates, therefore, that all other uses of "coupled" in this patent that are not qualified by the word "selectively" are intended to be a permanent connections.[1] Under GTL's proposal, "coupled" and "selectively coupled" would have the same meaning, so the reference to "selectively" would be superfluous. Terms in patent claims should not be construed so as to render the claim superfluous.[2]

4. "a workstation . . . configured to access recorded inmate conversation data stored in said device" (Claims 4 and 23)

---

[1] *See Phillips,* 415 F.3d at 1314 ("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms").
[2] *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369-70 (Fed. Cir. 2007).

"[T]he construction of claims is simply a way of elaborating the normally terse claim language[] in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Service Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000). Accordingly, constructions are often longer than the terms they define. Securus' proposed construction of "workstation" is not complicated; in fact, it is very clear and explains what a workstation is for the purposes of this patent and for the stated function. Claims 4 and 23 require that the workstation be specifically configured to access recorded inmate conversation data. Thus, the workstation cannot be a simple, dumb terminal. As explained in its opening brief, Securus' construction is supported by numerous dictionary definitions.

GTL contends that the workstation is depicted as terminal 210 in figure 2 of the patent. However, terminal 210 is not a workstation. *See* '732 patent at 7:35-54, Df. App. at 13. The specification plainly states that "[w]ithin central data center 110, terminal 210 corresponds, in many respects, to an onsite version of workstations 170, 170′ discussed supra in that terminal 210 has at least all the capabilities of the workstations 170, 170′." *See* '732 patent at 7:35-39, Df. App. at 13. GTL misleadingly omits this critical sentence, instead citing only to the next sentence in the specification to state that terminal 210 is illustratively shown as a personal computer, but may be embodied as other high-tech computers. By contrast, Securus cites to the full passage to show that the patent contemplates that a workstation is similar to terminal 210, which includes, at a minimum, personal computers.

5.   "ongoing conversation," "ongoing conversations" (Claims 6 and 10)

The key factor here is that the operator is not monitoring a recorded conversation; instead, the operator is connecting to and monitoring a live conversation that is in process as it is being monitored.  GTL argues simply that Securus' proposed construction is a verbose

paraphrasing of the claim language. This is plainly not the case. Securus' construction precisely clarifies the "terse claim language[] in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc.,* 216 F.3d at 1347. GTL seeks to avoid construction of this term so that it may later argue that Claims 6 and 10 may be infringed by monitoring a recorded conversation.

## B.  U.S. Patent No. 7,783,021.

1. "routing means" and "at least one routing means coupled to said telephone terminal and said central platform" (Claim 1)

The Court should reject GTL's argument that 35 U.S.C. §112 ¶ 6 does not apply to "routing means." While *Rodime PLC v. Seagate Tech. Inc.*, 174 F.3d 1294, 1302 (Fed. Cir. 1999), identifies an exception to the application of 35 U.S.C. §112 ¶ 6 where the means-plus-function claim "recites sufficient structure or material for performing" the specified function, Claim 1 of the '021 patent does not recite sufficient structure or any structure. Consequently, GTL cites no claim language that recites such structure. GTL's unsupported contention that "routing means" would signify "a router" to a person of ordinary skill in the art, even if correct, does not satisfy the *Rodime* requirement that the structure be sufficiently recited in the claim itself. *See id.* at 1303. Moreover, the patentee drew an explicit distinction between "router" and "routing means," both in the claims and in the specification. For example, he refers to "routing means" in Claim 1, to "a router" in Claim 20, and in Claim 11 he refers to a gateway including "routing means." *See* '021 patent 18:66, 20:4-5, 21:1, Df. App. at 29-31. The person of ordinary skill in the art would be alive to the fact the patentee is not, therefore, necessarily using the term "routing means" to mean simply a router.

GTL's proposed construction for "function" is flawed because it incorporates limiting language from the specification that is not present in any way, shape, or form in the claim.[3] Claim 1 simply makes no express or implied reference to "an outgoing trunk." Similarly, Claim 1 makes no reference to calls being routed "through" the central platform. Claim 1 refers only to routing means coupled to the telephone terminal and the central platform. Therefore, the function should be construed as Securus proposes because it more closely follows the language of the claim and does not incorporate extraneous limitations from the specification. Furthermore, the specification supports Securus' construction. Figures 1 and 3 depict routers between the telephone terminal and the central platform only; they do not depict routers on the distal side of the central platform. '021 patent FIGs 1 & 3, Df. App. at 17 and 19. In addition, the specification recites: "Router 121a routes attempted calls *to* central platform 101 via connection 115a." '021 patent 16:31-32, Df. App. at 28 (emphasis added). It does not recite "through central platform."

GTL's proposed construction does not solve the alleged (but, actually, non-existent) claim differentiation issue that GTL contends undermines Securus' proposed construction. If a call is routed through the central platform, it must also be routed to it. Therefore, Claim 2 would be redundant under GTL's proposed construction. In reality, Securus' proposed construction does not create a claim differentiation issue because Claim 2 is different from Claim 1. Claim 2 requires action, that the attempted call actually be routed to the central platform. Claim 1 simply requires that the system comprise a routing means for routing said call to the central platform.

By contrast, GTL's proposed structure is facially defective. The routing means allegedly depicted in Figures 2 and 4 cannot be structure corresponding to Claim 1 because these figures

---

[3] *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321 (Fed. Cir. 2003) (stating "we must identify the claimed function ... staying true to the claim language and the limitations expressly recited by the claims") (internal citations omitted).

depict an onsite system, whereas Claim 1 is limited to an offsite system. *See* '021 patent 15:34-36, 17:49-56, 18:59-60; 15:41-41; 18:31-33, Df. App. at 28-29. Moreover, GTL's proposed construction of "routing means" in Fig. 2 simply repeats the functional means-plus-function claim term and does not recite any structure.

2.  "one or more apparatuses digitizes audio and stores said audio for caller identification at said institution" (Claim 1), "one or more apparatuses digitizes audio regarding said conversation and stores said audio for caller identification at said institution" (Claims 7 and 20), and "central platform digitizes audio regarding said conversation and stores said audio for caller identification at an institution associated with said local user" (Claim 16)

GTL's proposed construction does not track the claim language, as GTL contends. The words "and is then used" do not appear in the claims; they have been fabricated by GTL in order to change the meaning of the claim. Securus' proposed construction actually tracks the claim language more faithfully than GTL's construction. Securus' construction preserves the limitation in the claim that the audio is stored for a purpose (i.e., for caller identification), whereas GTL's construction adds a limitation that the stored audio is then actually used for a specific function. That is not what the claim says.

GTL's contention that "it would make little sense to digitize the audio offsite, then send it back to the institution for storage" is at odds with the actual words of the patentee: "However, alternatively, depending on memory requirements, the data may be stored by server 113 or other servers, *located either on or offsite*." *See* '021 patent 16:50-53, Df. App. 28 (emphasis added). The server in figure 1 is located at the site (107n). *Id.* FIG 1, 15:59-16:5, Df. App. at 17 and 28.

In reality, it is GTL's argument that makes no sense. If one reads "at the institution" as modifying "caller identification," the alleged conundrum referred to by GTL still applies. Under GTL's construction the caller would be identified at the institution. But according to GTL, all the equipment for performing these functions is located offsite, not at the institution. Moreover, the

patentee did not solve this conundrum, as he did with regard to where the data may be stored. Therefore, GTL's proposed construction does not work and should be rejected.

3.   "coupled to" (Claims 1 and 7)

The Court should not construe "coupled to" as "connected to" without further qualification, as GTL proposes, because the patentee used both terms distinctly in the claims of the '021 patent and, presumably, intended them to have different meanings. *Compare* '021 patent 21:1-4, 22:10-11 (connected) and 18:54-58, 66, 19:35-36, 21:9-12 (coupled), Df. App. at 29-31.

GTL advocates deleting the word "directly" from the proposed construction of "coupled to." In support, GTL refers to an application filed in separate inter partes review proceedings. While the application had not been filed when GTL made its disclosure of extrinsic evidence, GTL did not apply for leave to supplement its disclosure of extrinsic evidence to include the application. Therefore, pages 5-10 of GTL's Appendix should be stricken from the record and ignored. In any event, while GTL contends that the "coupled" devices referred to in the application are "indirectly" connected, GTL does not define what it means by "indirectly." Hence, its selective reference to the application is, at best, obtuse.

However, as these claims of the '021 patent do not contain the same contextual variations present in the disputed claims terms of the '732 patent, Securus does not press for a construction of this claim term for the purposes of Claims 1 and 7 of the '021 patent.

4.   "further wherein said central platform comprises one or more apparatuses for processing said telephone call," (Claim 1), "further wherein said central platform includes one or more apparatuses for-processing said telephone call" (Claim 7), and "a central platform for processing said telephone call" (Claim 16)

Claims 1, 7 and 16 do not recite any structure whatsoever for the "central platform" or its "apparatuses." The words "platform" and "apparatus" are nonce words, just like means.[4] Reciting some of the capabilities of the platform or the apparatuses in the claims is purely functional claim-writing; it does not disclose any structure. GTL's inaccurate citation to *Inventio AG v. Thyssenkrupp Elevator Americas Corp.*, 649 F.3d 1350 (Fed. Cir. 2011), does not support GTL's argument because the language of Claims 1, 7 and 16, even if construed in light of the written description, does not describe any the internal components of the "platform" or "apparatuses." GTL mistakenly argues that *Inventio* precludes rebuttal of the presumption that 35 U.S.C. § 112, ¶ 6 does not apply if structure can be found in the specification (as opposed to the claim). *Inventio* makes clear, however, that "the focus remains on whether the *claim* as properly construed recites sufficiently definite structure to avoid the ambit of § 112, ¶ 6." *Id.* at 1356 (emphasis added). Any other approach "would vitiate the language of [§ 112, ¶ 6] requiring 'corresponding structure, material, or acts described in the specification.'"[5] GTL's reading of *Inventio* is untenable.

GTL rewrites the function of the central platform and its apparatuses to cover telephone calls generically, but the function recited in the claims is very specific: "for processing said telephone call." '021 patent 18:62, 19:47, 20:33, Df. App. at 29-30. The "said telephone call" (singular, not plural) is the call referred to, for example, in Claim 1 in the phrase "at least one telephone terminal for *making* a telephone call." '021 patent 18:54, Df. App. at 29 (emphasis

---

[4] *See Mass. Inst. of Tech. v. Abacus Software,* 462 F.3d 1344, 1354 (Fed. Cir. 2006); *see generally* M.P.E.P. § 2181 ("The following is a list of nonstructural generic placeholders that may invoke ... 35 U.S.C. [§ ] 112, paragraph 6: 'mechanism for,' 'module for,' 'device for,' 'unit for,' 'component for,' 'element for,' 'member for,' 'apparatus for,' 'machine for,' or 'system for.'")

[5] *See Biomedino LLC v. Waters Tech.*, 490 F.3d 946, 953 (Fed. Cir. 2007).

added). A person "makes" a call by initiating the call; a person does not make a call by receiving

a call initiated by someone else. GTL and Securus know and the person of ordinary skill in the

art would know that inmates cannot receive incoming calls, and that their outgoing calls are

strictly controlled and monitored. The call referred to by "said telephone call" is an outgoing

call, not an incoming call. Therefore, GTL's attempt to rewrite and broaden the function of the

apparatuses to include incoming calls should be rejected.

Securus is not being unreasonable in proposing a 16-part construction of structure. The

fact that the specification recites 16 pieces of necessary structure for processing "said telephone

call" is not the fault of Securus; that is the nature of the patentee's invention and the manner in

which he chose to write his claims. The fact that there may be numerous necessary

corresponding structures should not obviate the application of 35 U.S.C. § 112, ¶ 6.[6] The law

requires that the construction include all of the disclosed structures necessary to perform the

recited function.[7] If the specification discloses 16 necessary structures, so be it.[8] Claim 1 has 10

separate limitations, excluding the corresponding structures. *See* '021 patent 18:50-19:14, Df.

App. at 29-30. Surely, GTL does not contend that it would be unreasonable to require the jury to

find that all 10 limitations in Claim 1, or their equivalents, were present in the accused

instrumentality in determining infringement.

It is GTL who is being unreasonable by asserting patent claims that use functional

pleading, but at the same time shirking the statutory *quid pro quo* of disclosing corresponding

---

[6] *Encap LLC v. Oldcastle Retail Inc.*, No. 11-C-808, 2012 WL 2339095 (E.D. Wis. June 19, 2012), does not support GTL's argument because it does not even apply to 35 U.S.C. § 112, ¶ 6. *Id.* at *9.

[7] *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1119 (Fed. Cir. 2002).

[8] *See, e.g., Omega Eng'g, Inc.*, 334 F.3d at 1328 (Listing "numerous corresponding structures" disclosed in the specification).

---

structure in the specification and abrogating the responsibility to have the claims construed accordingly. GTL's proposed construction of structure is improperly generic and self-servingly vague. The boxes in the figures show no structure. They are simply two-dimensional, line-drawn rectangles with the following words or digits written inside them: "Central Platform 101" (Fig. 1) or "102" (Fig. 2) or "101" (Fig. 3) or "219" (Fig. 4). Surely, GTL does not expect to find such "structures" literally in the accused instrumentalities. Moreover, Figs 2 and 4 depict onsite systems and do not relate to the offsite system disclosed by Claims 1, 7 and 16. Therefore, the part of GTL's construction that refers to Figs 2 and 4 should be rejected in any event.

GTL does not substantiate its bald assertion that most of the structures are not necessary for processing the call. Moreover, GTL does not disclose what structures it contends are necessary for processing the calls. By contrast, Securus has carefully extracted from the specification all of the structures that the patentee described as necessary components of the central platform that process the call.

5. "wherein said local user is only granted access to place a telephone call if an authentication means verifies identification information as indicative of a valid user" (Claim 13)

GTL has made no effort to rebut the presumption that 35 U.S.C. § 112, ¶ 6 applies.[9]

While *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,* 239 F.3d 1225 (Fed. Cir. 2001), prohibits incorporation of structures that are not necessary to perform the recited structure, this principle does not apply in this case. In *Wenger*, the recited function was "circulating air through said reel." 239 F.3d at 1233. The Federal Circuit held that the district court erred by including structure necessary for "recirculating" air because "recirculating air" was not part of the recited function. *Id.* In the present case, the agreed function is "verifying identification information as

---

[9] *See York Prods., Inc. v. Central Tractor,* 99 F.3d 1568, 1574 (Fed. Cir. 1996).

indicative of a valid user." All of the structures included in Securus' construction perform this function; none of them performs an extraneous function. Securus has faithfully incorporated the description of these necessary structures from the specification. By contrast, GTL has paraphrased the necessary structures in order to secure a construction of structure that is overly broad and generic, thereby bringing into the literal scope of the claim potentially undisclosed equivalents of the disclosed structures. When construing a means-plus-function claim term, however, the Court must incorporate only the structures actually disclosed in the specification.[10]

## C. U.S. Patent No. 7,853,243.

1. "matching said first and second identification numbers" and "if said second voice print matches said first voice print" (Claim 1)

By using the terms "matches" and "matching" with regard to both identification numbers and voice prints in the same claim, the patentee is indicating that they should be construed in the same sense. GTL implicitly argues that these terms should have two different meanings, but will not divulge what those two meanings are. Numbers do not match if they are not identical; the number "24601" does not match the number "24602." GTL avoids defining "match" as it relates to numbers because doing so would defeat its argument regarding "matching." If one were to construe matching identification numbers as "if second identification number is from the same individual as said first identification number," the claim limitation would make no sense. The only way to determine that numbers match is if they are the same number.

GTL's proposed construction for matching voice prints is unworkable. The claim and specification do not speak of determining whether individuals match, but rather determining whether voice prints match in order to authenticate an individual. If GTL's proposed construction were correct, it would beg the question of how could one determine that a voice

---

[10] *In re Aoyama*, 656 F.3d 1293, 1297 (Fed. Cir. 2011).

print is from the same individual if it is not the same as the stored voice print. The specification does not provide an answer to that question.

GTL cites several cases to support its position that "matching" does not require construction and should, therefore, not be construed. None of them controls here or even provides pertinent guidance. Each of them is readily distinguished from the present case.

In *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.* No. 1:05CV00955, 2011 WL 6934603, at *10 (M.D.N.C. Dec. 30, 2011), the court did, in fact, construe "matching," construing it as "causing to correspond to." Matching the identification numbers or the voice prints in the '243 patent clearly does not mean "causing to correspond to."

Similarly, in *Smith v. United States*, 114 Fed. Cl. 428 (2013), the court did not decline to construe "matching," taking its construction from a definition in the specification. *Id*. at 435. In the present case, the specification does not define how voiceprints "match." GTL's comparison of thumbprints to voiceprints is not germane: thumbprints are not the same as voiceprints; and the specification does not explain how to obtain a "positive match" between thumbprints.

In *Advanced Software Design Corp. v. Fiserv, Inc.*, 625 F. Supp. 2d 815, 826 (E.D. Mo. 2008) and *Carl Zeiss Vision Int'l GMBH v. Signet Armorlite, Inc.*, No. 07CV0894 DMS (POR), 2008 WL 4951984, at *6 (S.D. Cal. June 2, 2008), the courts did decline to construe "matching," but this was based on the specific patents at issue, which contained nothing that required construing those terms in a particular or unique way. Similarly, in *Konami Corp. v. Roxor Games, Inc.*, 445 F. Supp. 2d 725, 735 (E.D. Tex. 2006), there was no need to construe "matching relationship" "because a proper understanding of 'matching relationship' may be reached from a plain reading of the term in context of the surrounding claim language." 445 F.

Supp. 2d. at 735. By contrast, where the patentee has used the terms "match" or "matching" for both identification numbers and voice prints, clarification of what was meant is required.

GTL cites *Bd. of Regents of the Univ. of Texas Sys. v. Benq Am. Corp.,* No. A-05-CA-181SS, 2006 WL 6112210, at *20 (W.D. Tex. July 14, 2006), for the proposition that non-identical items may match. In that case, however, the court noted that the specification did not require an exact identity between the items being matched. *Id.*at *20. By contrast, in the present case, identity is required because identification numbers can only match if they are identical.

2. "voice print" (Claim 1)

The patentee did not define a "voice print" or explain how to make a "voice print" anywhere in the voluminous specification of the '243 patent. The inventor appears to assume that the reader will already understand what a "voice print" is. None of GTL's citations to the specification of the '243 patent and the '736 patent specification defines a "voice print" or, as GTL implies, equates the term "voice print" with an audible recording of a voice. In fact, in theses passages, "voice print" and "voice data" are used distinctly. *See* citations at page 20 of GTL's opening brief. Hence, one must consider the extrinsic evidence for a definition of "voice print." For the reasons stated in Securus' opening brief, the extrinsic evidence supports Securus' proposed construction; it does not support GTL's proposed construction.

GTL contends that the supporting dictionary definition that Securus identified as from "maxwellbiometrics.com" actually is from a different "non-technical" source. It does so in order to debase the importance of that definition, but in doing so, GTL inaccurately asserts that in *Phillips*, 415 F.3d 1303, the Federal Circuit singled out reliance on non-technical dictionaries for criticism. In truth, *Phillips* also criticizes over-reliance on technical dictionaries. *Id.* at 1322. The real point of *Phillips* was to disapprove of the *Texas Digital* line of cases, which had elevated

dictionary definitions to a preeminent position over the specification for the purposes of claim construction. *Id.* at 1319-1322. *Phillips* made clear that the specification, not a dictionary, is "the single best guide to the meaning of a disputed term." *Id.* at 1320-1321. *Phillips* did not intend to preclude use of dictionaries, non-technical or otherwise. *Id.* at 1322.

Securus' proposed construction is also supported by the purpose of the patented invention, namely, to compare voice characteristics, in an objective manner, by analyzing "voice *prints*." It is implausible, as GTL suggests, that the patentee intended that the system would analyze and match "voice prints" by listening to audio recordings of voices. If the patentee had meant to claim "if voice recordings match," he would not have claimed "if voice prints match." None of the extrinsic evidence cited by GTL defines "voice print" as "voice recording."

Securus' proposed construction is not overly technical. The term "biometric information" is no more technical than "voice print." GTL's characterization of *U.S. Gypsum Co. v. LaFarge N. Am. Inc.*, No. 03-C-6027, 2009 WL 3720032 (N.D. Ill. Nov. 2, 2009), as generally eschewing use of technical language in claim construction is inaccurate. The *U.S. Gypsum* court rejected "homogeneity" as a construction of "uniformly," not because it was more technical than "uniformly," but because its technical connotation of "perfectly identical distribution functions" was not what "uniformly" meant. *Id.* at *11.

**D.  U.S. Patent No. 8,509,736.**

1.  "voiceprint" (Claims 1, 12, and 23) *See* Section C.2 above.

2.  "costs of conversations by said local user" (Claim 31)

GTL attempts to encumber broad claim language with narrow limitations in order to exclude embodiments that are clearly not excluded by the claim language that was selected by the patentee. The Court should prevent this claim manipulation by providing no construction, leaving the claim term to bear its plain and ordinary meaning.

Respectfully Submitted,

/s/ Anthony J. Magee

**G. Michael Gruber**
State Bar No. 08555400
mgruber@ghjhlaw.com
**Anthony J. Magee**
State Bar No. 00786081
amagee@ghjhlaw.com
**Robert E. Weitzel**
State Bar No. 24070823
rweitzel@ghjhlaw.com
**GRUBER HURST JOHANSEN HAIL SHANK LLP**
1445 Ross Avenue, Suite 2500
Dallas, Texas 75202
Telephone: 214-855-6800
Fax: 214-855-6808

*Attorneys for Defendant*
*Securus Technologies, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2014, Defendant electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send certification of such filing to all counsel.

/s/ Robert E. Weitzel

Robert E. Weitzel