IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLOBAL TEL*LINK CORPORATION, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| v. | § § | 3:14-CV-00829-K |
| SECURUS TECHNOLOGIES, INC., | § § § | ECF |
| Defendant. | § § § | |

**PLAINTIFF GLOBAL TEL*LINK CORPORATION'S
SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

This Court has instructed the parties to provide supplemental briefing on the impact of the Federal Circuit's recent en banc decision in *Williamson v. Citrix Online, LLC*, __ F.3d __, 2015 WL 3687459 (Fed. Cir. June 16, 2015) upon claim construction in this case. The *Williamson* court confirmed the longstanding rule that a patentee's decision not to use the word "means" in a claim creates a rebuttable presumption that the claim is *not* in means-plus-function format (i.e., a rebuttable presumption that 35 U.S.C. § 112, ¶ 6, does not apply). However, the en banc court overruled some recent cases that had said that the presumption is exceedingly strong and that litigants seeking to overcome it face a heightened evidentiary burden. *Williamson*, 2015 WL 3687459, at *7 (en banc as to Part II.C.1). The court clarified that "[t]he standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* (citing *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996)). If a claim term does not use the word "means," then in order to overcome the presumption that the claim is not in means-

plus-function format, the challenger must demonstrate "that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).

There are only two claim terms for which there is a dispute over whether § 112, ¶ 6, applies: "central platform" and "routing means." As explained below, plaintiff Global Tel*Link ("GTL") maintains that the "central platform" term is not in means-plus-function format because the term platform in the context of telecommunications systems denotes a structure. Thus, even applying the newly clarified standard in *Williamson*, GTL's previously proposed construction of "central platform" is correct and should be adopted. In light of the clarification provided by *Williamson*, however, GTL now agrees that "routing means" is in means-plus-function format.

***Central Platform:*** The asserted claims of U.S. Patent No. 7,783,021 (the '021 patent) refer to a "central platform" for "processing said telephone call." One of the key features of these claims is that the equipment that handles call processing is centralized rather than located on-site at the correctional facility where the inmate is placing a call. *See, e.g.,* '021 patent, claim 1 ("said central platform is located offsite from said institution"). What matters for purposes of the invention is the centralized *location* of that equipment rather than the specific *type* of equipment to be used. Therefore, the inventors used the term "platform" as an umbrella term to describe the various hardware and/or software that handle call processing. A leading technical dictionary from 2004—shortly before the application leading to the '021 patent was filed—defines "platform" as:

> A specific hardware and software configuration, including the operating system. When a program or hardware device will only function properly with a particular platform, it is called **platform-dependent**, while those which can work across multiple platforms are called **platform-independent**. Also called **computing platform**.

Steven M. Kaplan, *Wiley Electrical and Electronics Engineering Dictionary,* at 583 (John Wiley & Sons, Inc. 2004) (App. 34). The use of the term "platform" to describe the hardware and/or software for call processing is well understood by persons having ordinary skill in the art, and is exemplified by the fact that defendant Securus refers to its own collection of call processing equipment—the very equipment accused of infringing the '021 patent—as the "Secure Call Platform." Indeed, Securus's own website announces that the "Secure Call Platform™ (SCP) call management system is the heart of our Communications Management solution." *http://apps.securustech.net/fac_product_detail.asp?product_id=26* (visited July 16, 2015).

This use of "platform" as a structural term was well established long before the 2005 filing date of the '021 patent. Securus's predecessor company, T-Netix referred in a press release to its "considerable investment in the research and development of our new inmate calling platform." PR Newswire, *T-Netix Announces Fiscal 1998 Results of $0.07 vs. $0.06 Earnings Per Share,* PR Newswire Association, Inc. (Oct. 29, 1998) (quoting former T-Netix CEO Alvyn Schopp) (App. 36). Another T-Netix press release announced its acquisition of assets from ACT Telecom, Inc., "including the ACT telecommunications switch, prepaid calling platform and associated software." Business Wire, *T-Netix, Inc. Purchases Prepaid Calling Assets,* Business Wire, Inc. (July 3, 2002) (App. 39). By way of further example, Securus's predecessor company Evercom Systems obtained a patent on a call processing platform:

> In another embodiment, the present invention is directed to a call processing platform. The call processing platform comprises an interface for receiving a dialed number . . . ; a validation application for processing the dialed number to determine whether payment may be received for the collect telephone call, . . . ; and an automated call application that is operable to retrieve the stored dialed number to generate a telephone connection . . . .

U.S. Patent No. 6,836,540, at 3:55-67 (filed July 3, 2002) (issued Dec. 28, 2004) (App. 49).

Perhaps the best known company in the history of American telephony, AT&T Corporation, likewise obtained a patent entitled "Method and Apparatus for Fault Tolerant Call Processing," in which a call processing platform is essential to the invention:

> One embodiment of the invention comprises a call processing platform built upon general purpose computer devices.  The general purpose, non-specialized computing devices are combined with voice response units (VRUs) and a switching matrix to create a distributed, fault tolerant, easily maintained call processing platform that provides high service availability through the use of "hot" standby sparing, full data sharing, database replication and synchronization, and a software-based distributed monitoring system.

U.S. Patent No. 5,974,114, at 3:17-25 (filed Sept. 25, 1997) (issued Oct. 26, 1999) (App. 67).

Other industry players, such as NCIC, referred to "the traditional telecom prepaid platform" as a known structure:

> NCIC has installed it's [*sic*] new prepaid calling platform for the wholesale and retail markets.  The platform is built around a Cisco VCO4K switch utilizing Arbinet Soft-Net control systems.  The platform is based on the traditional telecom prepaid platform, but also ties into the DotCom internet telephony network for world-wide internet termination for economical and high quality international calling.

NCIC News Release, *NCIC introduces new Prepaid Calling Card Program for wholesale and retail services,* NCIC Inmate Phone Service (Sept. 1, 1999) (App. 84).  These and countless other examples confirm that platform denotes a structure in telecommunications systems and is therefore not simply a so-called nonce word like "means."

Under the newly clarified *Williamson* standard, because the term "centralized platform" provides sufficient structure for carrying out the function of processing telephone calls, the term should not be analyzed under §112, ¶ 6.  The absence of the word "means" creates a presumption that § 112, ¶ 6, does not apply.  Securus is unable to overcome that presumption because the word "platform" is a structural term referring to a collection of hardware and software used for call-processing.

*Routing Means*:  A person having ordinary skill in the art would understand, from the context of the claims and the specification, that the term "routing means" refers to a router, which is the equipment that the specification describes as carrying out the routing function.  *See, e.g.*, routers 121a-n of Fig. 1; routers 213a-n of Fig. 3; router 221 of Fig. 4.  Nevertheless, under the recent clarification provided by *Williamson*, it appears that "routing" is a functional term.  Unlike the term "platform," the term "means" does not refer to a recognized structure, nor is the term "means" modified by sufficient structure recited in the claim to perform the recited routing function.  Accordingly, GTL recognizes that it would be appropriate for the Court to analyze this claim term under § 112, ¶ 6.

Dated:  July 20, 2015

E. Leon Carter
Texas State Bar No. 03914300
lcarter@carterscholer.com
John Steven Torkelson
Texas State Bar No. 00795154
jtorkelson@carterscholer.com
Linda R. Stahl
Texas State Bar No. 00798525
lstahl@carterscholer.com
**CARTER SCHOLER ARNETT**
**HAMADA & MOCKLER PLLC**
8150 N Central Expressway, 5th Floor
Dallas, TX 75206
Tel: (214) 550-8188
Fax: (214) 550-8185

Respectfully submitted,

/s/ *J.C. Rozendaal*

J.C. Rozendaal (*pro hac vice*)
Courtney Simmons Elwood (*pro hac vice*)
Evan T. Leo (*pro hac vice)*
Kenneth M. Fetterman (*pro hac vice*)
Christopher C. Funk (*pro hac vice*)
Nicholas O. Hunter (*pro hac vice*)
**KELLOGG, HUBER, HANSEN, TODD,**
**EVANS & FIGEL, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 326-7900
Fax: (202) 326-7999

*Counsel for Plaintiff Global Tel*Link Corporation*

## CERTIFICATE OF SERVICE

      I hereby certify that on July 20, 2015, Plaintiff electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send certification of such filing to all counsel of record.

                                        /s/ *J.C. Rozendaal*
                                        J.C. Rozendaal